Parker, J.
On June 25th, 1896, Christina Roush filed her petition in the court of common pleas of this county attacking the validity of a will made by John Wensel, making defendants to her petition James H. Wensel and all other persons who appear to be interested, as required by sec. 5859 of the Revised Statutes, The date of the will referred to is January 25th, 1896. Its validity is attacked on the following grounds:
1st. That said John Wensel,at the time of said paper writing, was not of sound mind and memory, but by reason of extreme old age,long continued ill health and protracted sickness, he was mentally incapacitated from making any valid will or a proper distribution of his property.
2nd. That the said John Wensel,at the date of said paper writing, was under restraint, and was coerced into signing the same by the undue influence of the defendant James H. Wensel, and by false and fraudulent representations of the said James H. Wensel and certain other persons, who urged him continuously to make the so-called will in the manner and form m which it now appears.
3rd. That the said paper writing, purporting to be the last will and testament of the said John Wensel, was by him in his lifetime revoked.
4th. That the said supposed will is not in writing, as required by sec, 5916 of the Revised Statutes of Ohio.
The will in question, with the proof and probate, is with *135 the papers, and it appears that part of it is written and part of it is printed; the parts which are printed being the introductory clauses and the téstimentary clause. I may as well give the parts that are printed. It starts out in print “The last will and testament of,” and then is written in “John Wensel;” then printed11 of” and then written “Montgomery township, Wood county, Ohio;” and then printed “In the name of Benevolent Father of All: I, the said,’’then written “John Wensel;” then printed “being of sound and disposing mind and memory, considering the uncertainty of continuance in life, and desiring to make such disposition of my worldy estate as I deem best, do make, publish and declare, this to be my last will and testament; hereby revoking and annulling any and all former wills whatsoever by me made. First: I desire all my just debts and funeral expenses to be paid as soon as possible after my decease’ ’ then written “by my son James H. Wensel.” Then printed “Second: I give and bequeath, ” and then follows in writing about two pages of devises and bequests of his property; and then, at the close of the will,is printed “I nominate and appoint” written “my son James H. Wensel;” printed “to be executor of this will;” written “I desire that no appraisement be made;” and printed “In witness whereof I have hereunto set my hand and seal this,” written “25th, printed, “day of,” written, “January,” printed “in the year eighteen hundred and ninety” written “six”, and the name of the testator is signed. The clause following is partly written and partly printed
It is said that because these parts which I have mentioned are printed, the will is invalid, and we are referred to section 5916 of the Revised Statutes in support of that claim. This section was amended on the 17th of April, 1896,some-time after the execution of this will, but before the death of the testator, he having died on the 5th day of June, 1896. At the time this will was written the statute read as follows:—
*136 -“Every last will and testament (except nuncupative wills hereinafter provided for) shall be in writing and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testatdr subscribe, or heard him acknowledge the same.”
The amendment consists of the addition of the following words: “and may be handwritten or typewritten”, so that it now reads, “Every last will and testament (except nuncupative wills hereinafter provided for) shall be in writing, and may be handwritten or typewritten, and such will shall be signed at the end thereof, etc.” It seems to us that there was much less difficulty about the matter before the statute was amended. That it was easy enough to arrive at a conclusion before this amendment of the statute, that a will printed or partly printed would be a written will; but the legislature seems to have deemed it necessary to make it more specific as to typewritten wills, and in doing so they have put into the statute something which throws a doubt upon the validity of a printed will, or one partly printed.
Nevertheless we conclude that the subject is covered by another provision of the statute. Section 4947, is the first section of part third,remedial part of the Revised Statutes. The chapter on “Wills” reads as follows: “In the interpretation of part third, unless the context shows that another sense was intended, the word ‘person’ includes a private corporation, writing’ includes ‘printing,’ etc.”
So that we hold the “writing” as used in section 5916 of the Revised Statutes, includes “printing”, and that a printed will signed by the testator is valid.
After the plaintiff had rested her case, the defendant moved the court to direct the jury to return a verdict for the defendants in said cause, which motion the court sus *137 tained and directed the jury accordingly, to which plaintiff excepted, and a verdict was returned by the jury accordingly. Thereupon the plaintiff undertook to prepare a bill of exceptions incorporating all of the evidence, so that the question of whether the court erred in sustaining this motion might be submitted to this court. Now we find that the first thing that was offered by the defendants in evidence, as required by the statute, was this will and the record of probate. That part of the bill of exceptions reads as follows:
“The defendants offered in evidence the record of probate of the will of John Wensel, deceased, which is hereto attached, marked, Exhibit A” and made a part of the record in this cause”;
But it is not attached. It is not made a part of the bill of exceptions. The rules require that any exhibit that might be made a part of the bill of exceptions shall be attached to the bill. There are some things of course that cannot be attached, that it is physically impossible to attach to a bill of exceptions, and therefore the attaching of such exhibits may be excused or dispensed with. Notwithstanding that this exhibit has not been attached, we have looked into and have considered the questions raised, though we are not required to do so,and are not certain that we have any authority to do so, but our conclusions about the matter are such that no harm can come from it.
Now, on the trial of the case, the defendant, James H. Wensel, was called by the plaintiff in chief to maintain the issues on her part, and was asked certain questions about declarations made by himself as to the mental condition of the testator and to the effect that the testator was not capable of transacting business and should have a guardian. We cannot see how at that stage of the trial, that kind of questions, especially by counsel for the plaintiff, of a witness, whom he had put upon the witness stand to support his *138 claim, could be competent. We can hardly see how it can be competent at any stage of the case. It certainly would not be competent for the purpose of showing imbecility or want of testamentary capacity on the part of the testator to call a witness and ask him if he had not stated to someone that the testator was not competent to transact business with a view of eliciting -from him a declaration or admission that he had so stated. Nor would it be .competent to call as a witness a party to the suit, assuming that he was adverse, and undertake to lay the ground for his impeachment before he had been made a witness by anyone else for any purpose. He might not be produced as a witness upon the part of the defendants in the case at all; then, of what use or consequence would it be to call him and ask him certain questions, and then undertake by other witnesses to impeach him?
It would be like setting up a man of straw and knocking him down again, and would be making no progress in the case at all. We find nc error in the ruling of the court upon these questions. On pages 16 of the record, Mr. Van Voorhis, a witness on behalf of the plaintiff, was asked the. following questions:
“Q. I desire to ask you now, Mr. VanVorrhis,from what you saw of his condition and from the situation, and from the facts that you have stated, was he capable of carrying on ordinary business?”
The defendant objected and the court asked:— “What time?” And counsel answered,“InjJanuary, 1896.” It appears that the will was made on or about the 5th day of January, 1896. The court sustained the objection, and counsel for plaintiff stated,
“We except, and expect to show that this party would say that he was not capable of performing the ordinary business affairs of life.”
Now, the witness, Van Voorhis, was not an expert, and it *139 is not pretended that he was either a physician or expert on mental diseases, but he is asked to testify from his knowledge of certain facts. He is asked to express an opinion after having made certain observations. Looking into that which proceeds the question to which I have referred and which is supposed to form a basis for this inquiry, we find that the witness has testified that the testator was sick at the time he was referring to, and had been sick for some time, and he makes it very clear by his testimony that the testator was physically weak. He also states that the last time he was there he thought the testator was “a little flighty”. Just when this last time was, is not very clear, but that is the most he says — 'the strongest statement that he makes tending to show that.anything whatever had even temporarily affected the mind of the testator.
He was asked this question further on:
Q’. “Now state to the jury what, if any, changes you noticed and what they were?” A. “Well I don’t know as I can answer that question.”
Q. “Physically, what difference did you notice?” A. “I said he was feeble.”
Q. “Did you notice any difference in his mental condition? That is to say, in his condition while he was sick from what he had observed while he was well. A. No, I don’t,think I did; he did not say much. I generally asked him how he felt and made a few remarks and that is all that was said. ”
Now,upon what kind of preliminary examination the plaintiff claims the right to ask the witness and have him testify as to the mental condition or capacity of the testator? A non-expert witness may testify to his opinion of the mental condition of a person in connection with certain facts previously related and upon which he basis such opinion. He must state his observations and upon what he founds his opinion, but it must appear that those facts — those circumstances — are such as have a tendency, at least in some de *140 gree, to indicate mental weakness. There is nothing whatever in the testimony of this witness of that character, and nothing that we think would authorize him to express any opinion as to the mental condition of the testator. These observations apply to another witness whose name I do not now recall. There is a question of another character further along in the record which was excluded, but that is covered by what I have stated about the testimony that they attempted to elicit from the witness, James H. Wensel. At pages 50 and 51 of the bill of exceptions it appears that while Fred Heminger was testifying on behalf of the plaintiff, the following questions were asked:
“Q. Now I will ask you if you had any conversation with Henry Wensel in relation to the guardianship of the old man ?”
“Defendant objected, and exception.
“Q. I will ask you, Mr. Heminger, if on or about June 20th, 1896, in Bowling Green, Ohio, in conversation with Mrs. Roush and J. A. Bush you did not state to them that you stopped Henry Wensell from coming here to have a guardian appointed for the old man about the time Kabig got the stock two years ago?
“Defendantobjected and exception.
“Q. I will ask you as to whether on or about some time in the year, Í895 or’96,you did notstate to Dan Heminger—
“Defendants objected; sustained and exception, and the court said to plaintiff’s counsel:
“The record may show that the court will not allow counsel to cross-examine his own witness.”
We can see nothing in the record that would authorize this kind of questioning. Counsel does not seem to have been taken by surprise by any statement upon the part of the witness. He simply puts him upon the stand,- and attempts to elicit by his cross-examination, statements that counsel seem to have knowledge of. There is no offer to prove anything in answer to any of these questions, and that is sufficient reason for disregarding the exception, and *141 we think the ruling of the court was correct upon the ground that the court places it — 'that there was nothing in the circumstances that would authorize the plaintiff to cross-examine his own witness.
James & Beverstoclc, for Plaintiff in Error.
Baldwin & Harrington, for Defendant in Error.
As I have stated, the court directed a verdict, We have looked carefully through this record, and we cannot find any evidence tending to support the allegations of the petition to the effect that John Wensel was not of sound mind and memory at the time he made this will, or that he was under restraint or coerced, or that there was any fraud practiced upon him, or that he had in his lifetime revoked his will, and therefore we hold that the court did not err in directing the verdict and the judgment will be affirmed.